UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER J.B. MCKINLEY JR. and CARON D. MCKINLEY,<br><br>         Plaintiffs,<br><br>    v.<br><br>CITIMORTGAGE, INC.; and DOES 1-100, inclusive,<br><br>         Defendants. | No.  2:13-cv-01057-TLN-CKD<br><br>**ORDER** |

This matter is before the Court pursuant to Defendant CitiMortgage, Inc.'s ("Defendant") Motion to Dismiss Plaintiffs Roger J.B. McKinley, Jr. and Caron D. McKinley's (collectively "Plaintiffs") Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  (ECF Nos. 59 & 54.)  For the reasons set forth below, the Court hereby GRANTS Defendant's Motion to Dismiss.

## I.   FACTUAL BACKGROUND

The claims in this case arise out of Defendant's alleged conduct in connection with Plaintiffs' residential mortgage loan modification applications.  The residence ("the Subject Property") is located in Diamond Springs, California 95619.  (Pls.' Second Am. Compl., "SAC", ECF No. 54 at ¶ 1.)  The allegations giving rise to these claims are as follows.

On or about January 20, 2006, Plaintiffs applied for and obtained a loan from Citibank

1   (West) F.S.B. using the Subject Property as collateral.  (ECF No. 54 at ¶ 8.)  Soon thereafter,

2   Defendant "purported to take over the servicing rights to and became the beneficiary of the loan."

3   (ECF No. 54 at ¶¶ 2, 9.)

4        In late 2011, Plaintiffs began experiencing financial trouble and sought a loan

5   modification from Defendant.  (ECF No. 54 at ¶ 11.)  Pursuant to instructions from Defendant's

6   employee, they submitted a loan modification application.  (ECF No. 54 at ¶ 11.)  From late 2011

7   to August 2014, Plaintiffs submitted numerous loan modification applications to Defendant and

8   provided supporting documents and information when requested.  (ECF No. 54 at ¶¶ 13–17, 20–

9   25.)  Defendant continually requested additional information and documentation as well as new

10   applications despite Plaintiffs' submission of the requested materials.  (ECF No. 54 at ¶ 16.)  On

11   October 4, 2012, while Plaintiffs' request(s) for modification were under review, Defendant

12   recorded a Notice of Default against the Subject Property.  (ECF No. 54 at ¶ 14.)  On March 12,

13   2013, while Plaintiffs' request(s) for modification were still under review, Defendant recorded a

14   Notice of Trustee's Sale against the Subject Property.  (ECF No. 54 at ¶ 18.)

15        On November 26, 2014, Defendant's counsel sent Plaintiffs' counsel a letter dated

16   November 7, 2014, denying Plaintiffs a loan modification "based solely on Plaintiffs' 'Most

17   Recent Federal Income Tax Returns' (i.e. their 2013 federal tax return)."  (ECF No. 54 at ¶ 26.)

18   The letter also stated Defendant was "unable to provide Plaintiffs with a 'Citi Supplemental

19   Modification Program' because [Defendant was] 'unable to create an affordable payment without

20   changing the terms of [the] loan beyond the requirements of the program.'"  (ECF No. 54 at ¶

21   26.)  The letter also stated Plaintiffs were not eligible for "a Home Affordable Modification

22   Program (HAMP) loan modification because [Defendant was] 'unable to create an affordable

23   payment equal to 31% of [Plaintiffs'] reported monthly gross income without changing the terms

24   of [the] loan beyond the requirements of the program' and also state[d] that [Defendant] had

25   determined that Plaintiffs' monthly income was '$1'".  (ECF No. 54 at ¶ 28.)

26        On December 29, 2014, Plaintiffs submitted an appeal of the modification denial on the

27   basis that Defendant had miscalculated Plaintiffs' income.  (ECF No. 54 at ¶ 28.)  Plaintiffs also

28   provided additional documentation to demonstrate Plaintiffs' annual earnings and the profitability

1    of their company.  Specifically, the "appeal detailed that the tax return relied on by [Defendant] in

2    denying Plaintiffs a loan modification demonstrated that Plaintiffs earned $100,000 annually

3    ($8,333 monthly) and also demonstrated that Plaintiffs had reduced their monthly expenses by

4    $841 resulting in a net monthly surplus of $2,641.74."  (ECF No. 54 at ¶ 28 and Ex. 9.)

5    Defendant did not change its decision to deny Plaintiffs a loan modification in response to

6    Plaintiffs' appeal.  (ECF No. 54 at ¶ 29.)

7         Plaintiffs "allege that by failing to accurately assess Plaintiffs' monthly income and/or

8    expenses, [Defendant] denied Plaintiffs [] a modification for which they otherwise qualified."

9    (ECF No. 54 at ¶ 30.)  Plaintiffs "further allege ... that [Defendant] failed to comply with the

10   Settlement Term Sheet of the consent judgment entered in the case entitled *United States of*

11   *America et al. v. Bank of America Corporation*," Case No. 1:12-cv-00361 RMC, U.S. District

12   Court for the District of Columbia.  (ECF No. 54 at ¶ 31.)  *See e.g.* Cal. Civ. Code. §§ 2923.4(b),

13   2924.12(g).  Specifically, Defendant's conduct "violates the Settlement Term Sheet (IV)(A)(2)

14   which states that 'Servicer shall offer and facilitate loan modification for borrowers rather than

15   initiate foreclosure when such loan modification for which they are eligible are net present value

16   (NPV) positive and meet other investor, guarantor, insurer and program requirements.'"  (ECF

17   No. 54 at ¶ 31.)

18        **II.    PROCEDURAL HISTORY**

19        On April 24, 2013, Plaintiffs, as individuals, filed a Complaint in the Superior Court of El

20   Dorado County against Defendant, a corporation.[1]  (ECF No. 54 at ¶ 19.)  Plaintiffs applied for

21   and were granted a Temporary Restraining Order ("TRO") enjoining the foreclosure of the

22   Subject Property.  (ECF No. 54 at ¶ 19.)  On May 28, 2013, Defendant filed a Notice of Removal

23   to this Court, on the basis of diversity jurisdiction.  (ECF No. 1.)  Plaintiffs filed a Motion for

24   Preliminary Injunction on June 19, 2013.  (ECF No. 16.)  Based on a stipulation by the parties

25   (ECF No. 12), the Court ordered that the TRO remain in effect pending determination of the

26

27        [1] Defendant Northwest Trustee Services was named in the original Complaint, the First Amended
     Complaint, and the instant Second Amended Complaint, but was dismissed by order of this Court on Oct. 06, 2014,
28   pursuant to Plaintiffs' request.  (ECF Nos. 46 & 47.)

3

1  Motion for Preliminary Injunction.  (ECF No. 18.)  On June 18, 2013, Plaintiffs filed a First

2  Amended Complaint against Defendant.  (ECF No. 14).  This Court granted the Motion for

3  Preliminary Injunction enjoining the foreclosure of the Subject Property on February 19, 2014.

4  (ECF No. 39.)  On July 12, 2015, Plaintiffs filed the instant SAC against Defendant with

5  accompanying exhibits, including but not limited to, communications from Defendant and

6  Defendant's counsel and Plaintiffs' appeal of Defendant's denial of a modification in November

7  2014.  (ECF No. 54, Ex.'s 1–10.)  On August 19, 2015, Defendant filed a Motion to Dismiss the

8  SAC contending that Plaintiffs fail to state a claim upon which relief can be granted.  (ECF No.

9  59.)  Plaintiffs filed an Opposition to the Motion.  (ECF No. 60.)  Defendant filed a Reply.  (ECF

10  No. 61.)

11         In the SAC, Plaintiffs allege three causes of action against Defendant: (1) Violations of

12  California Civil Code Section 2923.6(c); (2) Violations of California Civil Code Sections 2923.4

13  and 2923.6(b); and (3) Negligence.  (ECF No. 54 at ¶ 10 and p. 1.)  Plaintiffs seek injunctive

14  relief and damages.  (ECF No. 54 at ¶¶ 41, 54 and pp. 12–13.)

15         **III.     STANDARD OF LAW**

16         A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

17  sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Federal Rule of

18  Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim

19  showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79

20  (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice

21  of what the claim . . . is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S.

22  544, 555 (2007) (internal quotations omitted).  "This simplified notice pleading standard relies on

23  liberal discovery rules and summary judgment motions to define disputed facts and issues and to

24  dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

25         On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

26  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of every

27  reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

28  *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

1    "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

2    relief." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads

3    factual content that allows the court to draw the reasonable inference that the defendant is liable

4    for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

5          Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

6    factual allegations."  *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.

7    1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

8    unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A

9    pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

10   elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

11   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

12   statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

13   facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

14   been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

15   459 U.S. 519, 526 (1983).

16         Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

17   facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting

18   *Twombly*, 550 U.S. at 570).  Only where a plaintiff has failed to "nudge[] [his or her] claims . . .

19   across the line from conceivable to plausible[,]" is the complaint properly dismissed.  *Id.* at 680.

20   While the plausibility requirement is not akin to a probability requirement, it demands more than

21   "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility inquiry is

22   "a context-specific task that requires the reviewing court to draw on its judicial experience and

23   common sense." *Id.* at 679.

24         If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

25   amend even if no request to amend the pleading was made, unless it determines that the pleading

26   could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

27   1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995));

28   *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

1   denying leave to amend when amendment would be futile).  Although a district court should

2   freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

3   deny such leave is 'particularly broad' where the plaintiff has previously amended its

4   complaint[.]"  *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.

5   2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

6      **IV.   ANALYSIS**

7      A.   <u>Violation of California Civil Code Section 2923.6(c) (Count One)</u>

8         Under California Homeowner's Bill of Rights ("HBOR"), "a mortgage servicer,

9   mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice

10   of sale, or conduct a trustee's sale, while the [borrower's] complete first lien loan modification

11   application is pending."  Cal. Civ. Code § 2923.6(c).  This activity, in which a lender engages in

12   loan modification negotiations while at the same time moving toward a non-judicial foreclosure

13   sale, is known as "dual tracking."  *Haltom v. NDEx W., LLC*, No. 2:16-cv-00086-TLN-KJN, 2016

14   U.S. Dist. LEXIS 5656, at *6 (E.D. Cal. Jan. 15, 2016).  The HBOR has made dual tracking

15   illegal.  *Id.*

16         Plaintiffs allege that Defendant violated Section 2923.6(c) by recording a Notice of

17   Default and Notice of Trustee Sale against the Subject Property while Plaintiffs were under

18   review for a loan modification.  (ECF No. 54 at ¶¶ 35–36.)  However, to the extent Plaintiffs seek

19   injunctive relief to halt an active foreclosure, this request now appears to be moot.  Defendant

20   responds – and Plaintiffs do not dispute – that it "rescinded the October 4, 2012 notice of default

21   and March 12, 2013 notice of trustee sale on March 23, 2015."  Defendant attaches copies of the

22   rescission of the notice of default and cancelation of the notice of trustee sale.[2]  (ECF No. 59-2.)

23   Generally, the cases cited by Defendant support the position that Defendant cannot be held liable

24   for dual tracking once it has rescinded the relevant foreclosure documents.  *See Diamos v.*

25   *Specialized Loan Servicing LLC*, No. 13-CV-04997 NC, 2014 WL 3362259, at *5 (N.D. Cal. July

26

27         [2] On Defendant's request, pursuant to Fed. R. Evid. 201 the Court takes judicial notice of the fact that this
     rescission and cancellation were recorded.  These documents are matters of public record and Plaintiffs do not oppose
     the request.  *See Gardner v. American Home Mortg. Servicing, Inc.*, 691 F. Supp. 2d 1192, 1196 (E.D. Cal. 2010).

28

1    7, 2014) ("by rescinding the [] notice of default, [Defendant] is currently free of liability

2    stemming from recording that notice of default"); *Avnieli v. Residential Credit Sols., Inc.*, No.

3    2:15-CV-02877-ODW-PJW, 2015 WL 5923532, at *5 (C.D. Cal. Oct. 9, 2015) (recognizing that

4    a servicer's HBOR violations are remedied after it rescinds the notice of default); *Jent v. N. Trust*

5    *Corp.*, No. 13–CV–01684 WBS, 2014 WL 172542, at *5 (E.D. Cal. Jan. 15, 2014) (holding that

6    liability was precluded when defendants had rescinded the notice of default and no trustee's deed

7    upon sale had been recorded).  *See also Vasquez v. Bank of Am. , N.A.*, No. 13-CV-02902-JST,

8    2013 WL 6001924, at *7 (N.D. Cal. Nov. 12, 2013) ("Plaintiff may not seek remedies under

9    Section 2924.12 that do not apply to the present status of the property").[3]

10          Plaintiffs oppose dismissal of this cause of action, but do not cite cases that would refute

11   the notion that liability is precluded when defendants rescind the notice of default and no trustee's

12   deed upon sale is recorded as the aforementioned authorities have held.  The case cited in

13   Plaintiffs' opposition in support of their first cause of action is *Alvarez v. BAC Home Loans*

14   *Servicing, LP*, 228 Cal. App. 4th 941, 951 (2014), but Plaintiffs identify no similarity in facts

15   between that case and their situation.[4]  Plaintiffs also acknowledge that the focus of their

16   complaint – including this cause of action – is Defendant's refusal to grant them a meaningful

17   review of their loan modifications, not Defendant's proceeding with an active foreclosure.  (*See*

18   ECF No. 60 at 8–10) ("By merely rescinding the foreclosure documents, which can be rerecorded

19   at any time, [Defendant] has not, therefore, complied with obligations under Civil Code § 2923.6

20   to review Plaintiffs for a loan modification in good faith"; "Plaintiff seeks only a judicial

21   determination that [Defendant][5] failed to engage in good faith in the modification review process

22   and deprived Plaintiff of a meaningful opportunity to obtain a modification by failing to take into

23   _____

24          [3] *See* § Cal. Civ. Code § 2924.12(a)("If a trustee's deed upon sale has not been recorded, a borrower may
     bring an action for injunctive relief to enjoin a material violation of [Section 2923.6]"); §2924.12(b) ("After a
     trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent

25   shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material
     violation of … [Section 2923.6] … by that mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent

26   where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale").

27          [4] The factual and procedural history was omitted from the published version of this case.  *Alvarez*, 228 Cal.
     App. 4th at 944 n. 1.

28          [5] "WELLS" in original.

                                                  7

account her actual income").  Relative to this cause of action, Plaintiffs highlight the statement in the SAC that: "Plaintiffs … are entitled to injunctive relief pursuant to California Civil Code § 2924.12 as a result of Defendant's material violation of California Civil Code § 2923.6. Furthermore, if Plaintiffs prevail in their request for injunctive relief or are awarded damages pursuant to Civil Code § 2924.12, Plaintiffs allege that they are entitled to reasonable attorney's fees." (SAC at ¶ 41; ECF No. 60 at 10.)  However, it is not clear what Plaintiffs seek to enjoin at this point.  To the extent Plaintiffs seek an order from this Court compelling Defendant to provide them a meaningful loan review, this issue is addressed relative to Plaintiffs' second cause of action, *infra*.

For the stated reasons, Plaintiffs' first cause of action is dismissed with leave to amend.[6]

B.  Violations of Civil Code Sections 2923.4 and 2923.6(b) (Count Two)

California Civil Code Section 2923.4 states:

> (a) The purpose of the act that added this section is to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure. Nothing in the act that added this section, however, shall be interpreted to require a particular result of that process.
>
> (b) Nothing in this article obviates or supersedes the obligations of the signatories to the consent judgment entered in the case entitled *United States of America et al. v. Bank of America Corporation et al.*, filed in the United States District Court for the District of Columbia, case number 1:12–cv–00361 RMC.

Section 2923.6(b) states:

> It is the intent of the Legislature that the mortgage servicer offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

As an initial matter, Defendant argues that § 2923.4 does not grant a private right of action

---

[6] There does appear to be a genuine dispute as to whether Defendant actually engaged in dual tracking under the HBOR prior to its rescinding the notice of default and notice of trustee's sale.  (ECF No. 59-1 at 7–8; ECF No. 60 at 10–12.)  It appears a plaintiff subject to dual tracking could incur costs for various reasons while dual tracking was occurring, even if the relevant documents are later rescinded and the foreclosure was canceled.  However, Plaintiffs do not cite a case with this set of circumstances that has permitted a claim for dual tracking to proceed.

to Plaintiffs.  At least one case decision supports this position.  *See Crane v. Fargo*, No. CV 13–01932 KAW, 2014 WL 1285177, at *3 (N.D. Cal. Mar. 24, 2014) (agreeing that "§ 2923.4 does not provide a specific right or impose a specific obligation, but merely states the general purpose of [HBOR]").  Section 2923.4(a) itself provides: "Nothing in the act that added this section, however, shall be interpreted to require a particular result of that [nonjudicial foreclosure and modification] process."  The language of § 2923.4 and its placement within Article 1, "Mortgages in General," of the California Mortgage Code suggests this section merely defines the purpose of the HBOR.  Further, the section under which Plaintiffs seek damages or injunctive relief, § 2924.12, does not list § 2923.4 as one of the sections that a defendant can be liable for violating.  Based upon the foregoing, the Court finds that Plaintiffs do not establish a basis for stating a violation of § 2923.4.[7]  Thus, the Court will consider Plaintiffs' second cause of action as seeking relief for a violation of § 2923.6(b).  Section 2923.6(b) also provides that it "is the *intent* of the Legislature that the mortgage servicer offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority" (emphasis added).  However, § 2923.6 is listed in section 2924.12 as a statute that can be violated and for which injunctive relief or damages are available.

    At this juncture, no notice of default or notice of trustee's sale is on record.  *See* § 2924.12 (providing for injunctive relief for "material violations" of the HBOR prior to the recordation of a trustee's deed upon sale, and for economic damages after a trustee's deed upon sale has been recorded).  Thus, economic damages as a form of relief are not available.  Plaintiffs must seek injunctive relief, and injunctive relief is proper only if Plaintiffs show a "material violation" of § 2923.6(b).  Thus, the Court will first take up the issue of whether Plaintiffs state a factual basis for a material violation of § 2923.6(b)'s mandate that "the mortgage servicer offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority."  The second issue is whether the Court may issue either a declaration that

---

[7] In the general allegations portion of the SAC and under their second cause of action, Plaintiffs allege a failure to comply with the "Settlement Term Sheet of the consent judgment entered in the case entitled *United States of America et al. v. Bank of America Corporation*," Case No. 1:12-cv-00361 RMC, U.S. District Court for the District of Columbia.  (ECF No. 54 at ¶¶ 31, 52.)   However, Plaintiffs make no further argument or explanation on this issue in their opposition.

Defendant does not engage in a meaningful review of Plaintiffs' loan applications, or a mandatory injunction compelling the servicer to engage in such a review, as Plaintiffs appear to request.

Plaintiffs summarize the relevant allegations in the SAC specific to this cause of action, as follows:

- "Plaintiff submitted no fewer than four modification applications to [Defendant] over a three year period due solely to [Defendant's] improper handling of their various loan modification applications.  Throughout that process, [Defendant] continually requested documents that it already had, failed to timely review the documents that it did have, improperly placed Plaintiffs' modification application review on hold or merely failed to conduct a review and repeatedly requested that Plaintiffs begin the modification review process over again."  (ECF No. 54 at ¶ 47.)

- "When [Defendant] finally completed a review of Plaintiffs' loan modification application after three years, [Defendant] incorrectly determined that Plaintiffs had a monthly income of $1 and denied them for a modification as a result.  []  [Defendant's] calculation of Plaintiffs' monthly income was not supported by the information or documentation that Plaintiffs had provided [Defendant] throughout the three year modification review process."  (ECF No. 54 at ¶ 48.)

- "When Plaintiffs provided documentary evidence that, after taking into account their monthly income and expenses, they had a monthly surplus of $2,641.74, [Defendant] refused to acknowledge its error and instead confirmed the decision to deny Plaintiffs a loan modification without providing any explanation as to the reasoning for doing so."  (ECF No. 54 at 49.)

- "Plaintiffs allege that [Defendant's] failure to accurately calculate their monthly income effectively denied Plaintiffs a meaningful opportunity to obtain available loss mitigation options … "  (ECF No. 54 at ¶ 50.)

- "Plaintiffs allege that had their income been properly reviewed, they would have qualified for a loan application."  (ECF No. 54 at ¶ 51.)

Summarized slightly differently in Plaintiffs' opposition:  "[Plaintiffs] submitted three

modification applications prior to January 1, 2013: one in late 2011, one in October 2012 when [Defendant] without justification required Plaintiffs to submit a new modification application, and one in November 2013…"  (ECF No. 60 at 11.)  Relative to a fourth loan application in August 29, 2014, Defendant "grossly miscalculated Plaintiffs' monthly income and denied them for a loan modification, which they would have otherwise qualified for, as a result."  (ECF No. 60 at 11.)  Plaintiffs also state in the general allegations portions of the SAC that: the appeal of Defendant's November 2014 denial "detailed that the tax return relied on by [Defendant] in denying Plaintiffs a loan modification demonstrated that Plaintiffs earned $100,000 annually ($8,333 monthly) and also demonstrated that Plaintiffs had reduced their monthly expenses by $841 resulting in a net monthly surplus of $2,641.74."  Plaintiffs have attached a copy of the appeal.  (ECF No. 54 at ¶ 28 and Ex. 9.)

Relying on the foregoing allegations, the Court finds Plaintiffs state a material violation of § 2923.6(b) for failing to properly evaluate Plaintiffs' loan modification applications, "consistent with its contractual or other authority" to offer a loan modification if Plaintiffs qualify for one.  Cal. Civ. Code § 2923.6(b).  The SAC's allegations "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and taken as true these allegations "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Plaintiffs therefore have met the pleading requirements to withstand a motion to dismiss.

Defendant states two arguments as to why the SAC is deficient, but each of these arguments relies upon disputed facts.  First, Defendant argues that Plaintiffs were properly evaluated for a loan modification prior to January 1, 2013 when the HBOR was enacted, and Plaintiffs do not allege a material change in their financial circumstances.  *See* Cal. Civ. Code § 2923.6(g) (stating that servicers are not required to evaluate a loan application if they considered one  prior to January 1, 2013 and borrowers do not allege a material change in their financial circumstances since the previous application).  Second, Defendant argues that Plaintiffs' most recent application was properly denied in November 2014, and the appeal of that decision was

1   also properly denied.  (*See* ECF No. 59-1 at 7–10.)  In support of these arguments, Defendant

2   directs the Court to a November 16, 2012, letter to Plaintiffs which states: "we have received your

3   documents and your file has been forwarded to a Homeowner Support Specialist for review," thus

4   indicating Plaintiffs were evaluated for a modification prior to January 1, 2013.  (ECF No. 54, Ex.

5   3.)  Defendant argues Plaintiffs fail to demonstrate any difference between their modification

6   applications prior to January 1, 2013, and after that date.  Defendant argues the 2014 profit and

7   loss statements attached to the SAC (which were part of Plaintiffs' appeal of the November 2014

8   denial) were generated after Plaintiffs had already been evaluated for a modification; thus,

9   Plaintiffs cannot argue that the financial figures it now brings to the Court's attention were before

10  Defendant at the time Defendant evaluated Plaintiffs for a modification.  Defendant argues further

11  that even if the Plaintiffs' statement of profit and losses were considered as part of a modification

12  application (it appears namely, the profit attributed to two businesses, ImagAbility Inc. and Tell 5

13  Friends), Plaintiffs' businesses were operating at a substantial net loss. Defendant submits that

14  even if Plaintiffs' earnings were approximately $100,000 and resulted in a monthly surplus of

15  $2,641.74 as claimed, these earnings do not show Plaintiffs could afford to pay the necessary

16  amount for a monthly repayment on their loan in order to receive a modification, or that Plaintiffs

17  met the other requirements for a loan modification.  (*See* ECF No. 9-1 at 7–10.)

18      In short, Plaintiffs dispute that the financial information they have alleged, including a

19  monthly surplus of $2,641.74 and approximately $100,000 in earnings from their businesses,

20  disqualifies them for a loan.  Plaintiffs dispute whether this information was properly considered

21  on their appeal of the November 2014 denial.  Plaintiffs also submit that, regardless of whether

22  they would qualify for a loan, Defendant did not engage in a meaningful review of their loan

23  applications.  (ECF No. 60 at 10–11, 13–14.)

24      The Court is required to draw inferences in Plaintiffs' favor.  Further, the Court cannot

25  rely upon matters outside of the pleadings (communications from Defendant, statements of profit

26  and loss attributed to Plaintiffs' businesses, pay stubs, etc.) in resolving the instant motion,

27  without converting it into a motion for summary judgment.  *See* Fed. R. Civ. P. 12(d) ("If, on a

28  motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not

1  excluded by the court, the motion must be treated as one for summary judgment under Rule 56.

2  All parties must be given a reasonable opportunity to present all the material that is pertinent to

3  the motion."). At this stage, it is beyond the Court's authority to factually resolve whether

4  Plaintiffs were qualified for a loan modification at various points leading up to the filing of the

5  complaint, whether Plaintiffs' financial circumstances changed between the filing of loan

6  applications before and after the HBOR went into effect, and whether Defendant engaged in a

7  meaningful review of Plaintiffs' applications. Therefore, the Court finds that Plaintiffs state an

8  adequate factual and legal basis for a violation of § 2923.6(b), which is all that is required to

9  withstand a motion to dismiss.

10      The final issue, however, is what relief Plaintiffs are seeking. Given that injunctive relief

11  is the only available relief at this point under § 2924.12, it appears Plaintiffs would seek an

12  injunction compelling Defendant to engage in a meaningful review of their loan application.

13  However, the only specific request for injunctive relief contained in the SAC's "Prayer for

14  Relief" is for an injunction to prevent "the foreclosure or attempted foreclosure of the Subject

15  Property." (ECF No. 54 at 12.) Given the rescission of the relevant foreclosure documents, there

16  is no active foreclosure. Plaintiffs cite no case finding that, under § 2923.6(b) specifically, a loan

17  servicer can be compelled by a court to engage in a meaningful review. Plaintiffs also do not

18  appear to request this Court to compel Defendant to *grant* them a loan modification. Plaintiffs

19  have stated at multiple points in their Opposition: "Plaintiffs seek only a judicial determination

20  that [Defendant] failed to engage in good faith in the modification review process and deprived

21  Plaintiffs of a meaningful opportunity to obtain a modification by failing to take into account their

22  actual income." (ECF No. 60 at 13; *see also* ECF No. 60 at 9.)

23      Based on the foregoing, the Court will not read into the HBOR a specific remedy for a

24  violation of § 2923.6(b) – compelling Defendant to engage in a meaningful review – without

25  guidance from California courts or other authority on this specific issue. If such authority does

26  exist, then Plaintiffs can notice that authority to the Court in conjunction with an amended

27  complaint. The Court further notes that it appears Plaintiffs' second cause of action overlaps with

28  their third cause of action (negligence) in terms of the factual basis and the relief sought. "A

13

1   claim for declaratory relief is unnecessary where an adequate remedy exists under some other

2   cause of action." *Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal.

3   2009); s*ee also Stream Cast Networks, Inc. v. IBIS LLC*, No. CV05-04239MMM (EX), 2006 WL

4   5720345, at *5 (C.D. Cal. May 2, 2006) (denying a motion to dismiss where the court determined

5   that the claim for declaratory relief was not redundant of Plaintiff's other claim).  Thus, it is not

6   apparent that Plaintiffs' request for a "judicial determination" that Defendant has violated §

7   2923.6(b) cannot be covered in their third cause of action.

8          For the foregoing reasons, the Court finds Plaintiffs do not state a cause of action for a

9   violation of § 2923.6(b), and thus the Motion to Dismiss is GRANTED as to this claim.  Leave to

10  amend is granted, if Plaintiffs can address ambiguities in terms of what relief they seek and any

11  other deficiencies noted herein by the Court.

12                 C.  Negligence (Count Three)

13         The elements of a negligence cause of action are: (1) the existence of a duty to exercise

14  due care; (2) breach of that duty; (3) causation; and (4) damages.  *See Merrill v. Navegar, Inc.*, 26

15  Cal. 4th 465, 500 (2001).  In summary, the parties dispute whether Plaintiff has adequately

16  alleged facts to support a cause of action based on these elements.  (ECF No. 59-1 at 10–15; ECF

17  No. 60 at 14–17.)

18                        *i. Duty of Care*

19         The question of whether a duty of care exists is a question of law to be determined on a

20  case-by-case basis.  *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 62 (2013).

21  In California, the general rule is that "a financial institution owes no duty of care to a borrower

22  when the institution's involvement in the loan transaction does not exceed the scope of its

23  conventional role as a mere lender of money."  *Nymark v. Heart Fed. Savings & Loan Assn.*, 231

24  Cal. App. 3d 1089, 1096 (1991).  Still, "*Nymark* does not support the sweeping conclusion that a

25  lender never owes a duty of care to a borrower."  *Alvarez*, 228 Cal. App. 4th at 945 (internal

26  quotation marks omitted).  To determine whether a duty of care exists, the Court must balance the

27  *Biakanja* factors:

28         [1]  the extent to which the transaction was intended to affect the

14

plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

*See Nymark*, 231 Cal. App. 3d at 1098 (citing *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958)).  In *Meixner v. Wells Fargo Bank, N.A.* (Nunley, J.), this Court followed the reasoning in *Alvarez*, and held that under the six factors set forth in *Biakanja*, the lender owed a duty of care to the borrower when considering his loan modification.  *Meixner v. Wells Fargo Bank, N.A.*, 101 F. Supp. 3d 938, 955 (E.D. Cal. 2015).

Here, the first factor – the extent to which a modification will affect Plaintiffs – is met because Defendant's treatment of Plaintiffs' loan modification applications may determine whether Plaintiffs can make adequate payments toward their loan in the future, and what alternatives to foreclosure Plaintiffs can seek going forward.  The second factor, the foreseeability of harm, is also met because by allegedly failing to review the loan application documents in good faith, Defendant could foresee Plaintiffs not obtaining a loan modification and consequently becoming unable to pay the loan in the long term.  As stated in *Garcia v. Ocwen Loan Servicing, LLC*, "[a]lthough there was no guarantee the modification would be granted had the loan been properly processed, the mishandling of the documents deprived Plaintiff of the possibility of obtaining the requested relief."  *Garcia v. Ocwen Loan Servicing, LLC*, No. C 10-0290 PVT, 2010 WL 1881098, at *3 (N.D. Cal. May 10, 2010)).   Relative to the third factor, Plaintiffs' injury, Plaintiffs allege that due to Defendant's negligence, Plaintiffs were wrongfully denied a loan modification, suffered damage to their reputation in the community, and experienced pain and suffering.  (ECF No. 54 at ¶¶ 60–61.)  However, this statement of damages is conclusory and speculative.  Further, Defendant submits and Plaintiffs do not appear to dispute, that "Plaintiffs have not made any payments since the payment due for September 2011, and have lived in the property payment free since that time…"  (ECF No. 59-1 at 15.)  Thus, Defendant raises the issue of whether any damages Plaintiffs could claim are more than offset by Plaintiffs having the opportunity to live in their home without paying their mortgage.  As to the fourth factor, based on the allegations detailed *supra*, there is a close connection between Defendant's conduct and

15

1  Plaintiffs being denied a loan modification, because Defendant is alleged to be an active

2  participant in handling and reviewing Plaintiffs applications.  Relative to the fifth factor, the

3  moral blame of Defendant's conduct, it is not clear at this point the extent to which moral blame

4  should be applied to Defendant's conduct, so the Court declines to speculate and issues no finding

5  relative to this factor.  Finally, the sixth factor, the policy of preventing future harm, weighs in

6  favor of Plaintiffs because the passing of the HBOR "demonstrates a rising trend to require

7  lenders to deal reasonably with borrowers in default to try to effectuate a workable loan

8  modification." *Alvarez*, 228 Cal. App. 4th at 950; *Meixner*, 101 F. Supp. 3d at 955.  After

9  carefully balancing the six *Biakanja* factors, the Court finds that Defendant likely owed Plaintiffs

10  a duty of care in considering Plaintiffs' loan modification applications.

11  *ii. Causation and Damages*

12  To state a negligence claim, Plaintiffs must allege damages that were proximately caused

13  by Defendant's breach of a duty of care.  *Lueras*, 221 Cal. App. 4th at 62 (2013).  As stated,

14  specific to this cause of action Plaintiffs allege damages in that they were wrongfully denied a

15  loan modification; they have suffered injury to their reputation; and they have endured pain and

16  suffering.  (ECF NO. 54 ¶¶ 60–61.)  Relative to reputational injury and pain and suffering, this

17  statement of damages is conclusory and speculative.  Further, while Plaintiffs' main claim is that

18  they have been denied a right to receive a meaningful review of their loan applications, Defendant

19  has submitted and Plaintiffs do not appear to dispute, that in the meantime Plaintiffs remain in

20  possession of the residence and are not paying their mortgage.  Plaintiffs reference *Alvarez,*

21  *supra*, but in that case "[p]laintiffs alleged that the mishandling of their applications 'caus[ed]

22  them to lose title to their home, deterrence from seeking other remedies to address their default

23  and/or unaffordable mortgage payments, damage to their credit, additional income tax liability,

24  costs and expenses incurred to prevent or fight foreclosure, and other damages.'" *Alvarez*, 228

25  Cal. App. 4th at 948–949.  Plaintiffs do not make analogous allegations here, and it appears they

26  cannot, given that there is no active foreclosure.  "In the absence of facts sufficient to show that a

27  defendant's alleged misconduct caused the plaintiff to foreclose or suffer other damages, courts

28  have dismissed the negligence claims." *Greene v. Wells Fargo Bank, N.A.*, No. C 15-00048 JSW,

1    2015 WL 4571545, at *3 (N.D. Cal. July 28, 2015) (collecting cases).  For these reasons, the

2    Court finds Plaintiffs have not adequately alleged that they suffered damages as a result of

3    negligence on Defendant's part.

4         Because the absence of any of these elements – duty, breach of duty, and damages caused

5    by that breach – is fatal to a negligence claim, the Court does not reach the breach of duty

6    element.[8]  *Gilmer v. Ellington*, 159 Cal. App. 4th 190, 195 (2008).  Because Plaintiffs do not

7    adequately explain what damages resulted from Defendant's negligence, the Court GRANTS

8    Defendant's Motion to Dismiss as to the negligence claim, with leave to amend.

9       **V.**     **CONCLUSION**

10        For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 59) Plaintiffs'

11    Second Amended Complaint is hereby GRANTED WITH LEAVE TO AMEND.  Plaintiffs shall

12    file any amended complaint within 14 days of entry of this Order.

13

14    Dated: June 13, 2016

15

16

17                         Troy L. Nunley

                          United States District Judge

18

19

20

21

22

23

24

25

26

27

---

28     [8] Likely, the same facts alleged by Plaintiffs in support of their § 2923.6(b) claim also would support the "breach" element of a negligence claim.

17